## Commonwealth v. Vorous, Jr.

*S. B. Harris*, for appellant.

*H. Ray Pope, Jr.*, for Secretary of Revenue.

LONG, P. J., fifty-fourth judicial district, specially presiding, December 22, 1949.—William S. Vorous, Jr., has appealed from the order of the Secretary of Revenue suspending his privilege to operate a motor vehicle. The facts averred in the petition, which are not denied, are: That appellant is the holder of Pennsylvania motor vehicle license for the year 1949; that after hearing by the Department of Revenue his license was suspended by the Secretary of Revenue for a period of 90 days from April 7, 1949, and the reason for withdrawal is that appellant was speeding.

By virtue of article VI, sec. 616, of The Vehicle Code of May 1, 1929, P. L. 905, and the Act of June 27, 1939, P. L. 1135, sec. 10, 75 PS §193, a petition was filed in this court by appellant on April 11, 1949, praying for a hearing upon 30 days' written notice to the Secretary of Revenue, whereupon the court made an order allowing the prayer of petitioner and fixed no date as the time for hearing, but directed that the appeal should operate as a supersedeas.

The Secretary of Revenue having received more than 30 days' notice of the date fixed, the matter came on for hearing and plaintiff, the Secretary of Revenue, appeared through counsel and offered two witnesses, each of whom was a member of the Pennsylvania State police. Appellant was present with counsel.

Section 615 of The Vehicle Code of May 1, 1929, as amended by the Act of June 27, 1939, P. L. 1135, sec. 9, 75 PS §192, provides:

"(b) The secretary may suspend the operator's license . . . of any person, after a hearing before the secretary or his representative, whenever the secretary finds upon sufficient evidence:

"2. That such person has committed any violation of the motor vehicle laws of this Commonwealth."

Upon an appeal from a suspension or revocation of an operating privilege, the court, under The Vehicle

Code, sec. 616, is required "thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license. . . ." (75 PS §193).

The Act of May 1, 1929, P. L. 905, sec. 1002, as amended by the Act of June 27, 1939, P. L. 1135, sec. 23, and the Act of April 15, 1941, P. L. 17, and the Act of June 5, 1947, P. L. 399, secs. 1 and 2, 75 PS §501, provides:

"(b) Subject to the provisions of subsection (a) of this section, speeds in excess of the maximum limits hereinafter provided shall be unlawful. . . .

"6. Fifty (50) miles an hour speed limit: All vehicles, except those otherwise restricted by this Act to lower maximum speeds."

Subsection (d) of the same act provides that for the purpose of ascertaining whether or not the operator of a motor vehicle is violating a speed provision of this act in other than business or residence districts,

". . . the rate of speed shall be timed, for a distance of not less than one-quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation."

The power conferred upon the Secretary of Revenue to revoke or suspend operating privileges is an administrative and not a judicial function: Commonwealth v. Funk, 323 Pa. 390; Commonwealth v. Cronin, 336 Pa. 469.

The testimony of James D. Barger and Lawrence R. Nee, Pennsylvania State police officers, respectively, called on behalf of the Department of Revenue, was to the effect that while on their official duties on February 13, 1949, about the hour of 1:45 a.m., they were parked at the intersection of State Highway Routes 422 and 66, respectively, in Manor Township, Armstrong

County, where they observed appellant driving through the intersection. They followed him South on State Highway Route 66, where, for the first half mile or more, there were a number of sharp curves; that they followed appellant and near to the intersection on State Highway Route 128 with Route 66, for a distance of about four tenths of a mile they clocked appellant's speed with a motor vehicle equipped with a speedometer which had been tested for accuracy within a period of 30 days prior to that date for a distance of about four-tenths of a mile; that his speed was slightly over 60 miles per hour. Upon entering Fifth Avenue Extension at Ford City, Pa., the operator of the car was stopped. He produced his cards and his name was William S. Vorous, Jr., appellant. His speed for a distance of two miles from the intersection until the point where the officers stopped appellant was 60 miles per hour. The officers filed an information against Mr. Vorous on a charge of speeding while operating a Mercury sedan and he paid the minimum fine and costs. Certificates of the accuracy of the witnesses' speedometer were admitted into evidence and showed that the speedometer had been tested by an agent authorized to check the accuracy of speedometers and was found accurate on February 2, 1949, and on March 2, 1949, respectively.

Appellant testified that he is employed by his father, an undertaker, and resides in New Bethlehem, Pa.; that he was operating his automobile at the time and place described by the officers and that, because the speedometer was out of order, he does not know the speed at which he was driving, other than what the officers told him; the night was clear and conditions were favorable.

Does the testimony warrant the court in determining that appellant's license should be suspended on the ground that he violated the statute restricting speed?

The weight of the testimony is in favor of respondent, the Department of Revenue. Mr. Vorous's sole defense is that his speedometer was out of order. His counsel, however, contends that appellant is a trained motor vehicle operator and is almost indispensable in the performance of his father's business.

Considering all these statements to be true, how can the court wink at the violation of the speed law described by the officers and not denied by appellant? The legislature has limited the speed of this vehicle to 50 miles per hour. We have, in every instance, been extremely liberal toward the operator of a motor vehicle while considering appeals of this character. Nevertheless, while we feel very sorry for Mr. Vorous, we have no alternative in this case, except to sustain the suspension ordered by the Secretary of Revenue. See Bureau of Highway Safety v. Wright, 355 Pa. 307; Commonwealth v. Garman, 361 Pa. 643.

We make the following

*Order*

And now, December 22, 1949, the matter having come on for hearing after 30 days' written notice to the Secretary of Revenue, testimony having been taken on September 30, 1949, and transcript of testimony having been delivered to the court on December 16, 1949, the court, after having examined into the facts of the case for the purpose of determining whether appellant is subject to suspension of his operator's license under the provisions of the act of assembly, and having determined that the suspension of appellant's privilege to operate his motor vehicle shall be sustained, hereby directs appellant to deliver, if not heretofore delivered, his license to operate to the Secretary of Revenue as directed by the secretary. Appellant shall pay the record costs due the prothonotary.